IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TREVOR KELLEY,<br><br>Plaintiff,<br>v.<br><br>SEAGULL BOOK & TAPE, INC., d.b.a. SEAGULL BOOK,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cv-717<br><br>District Judge Jill N. Parrish |

Before the Court is Defendant's Rule 12(b)(1) motion to dismiss, filed September 8, 2017 (ECF No. 14). For the reasons below, the Court converts Defendant's motion to dismiss to a motion for summary judgment and grants both parties an opportunity to submit additional evidence.

## I. BACKGROUND

Plaintiff Trevor Kelly has severe mobility issues due to Arthrogryposis Multiplex Congenita. The condition results in limited or absent movement around small and large joints known as contractures. Plaintiff is unable to walk and relies on a wheelchair for mobility.

On June 29, 2017, Plaintiff filed a complaint against Defendant Seagull Book, alleging violations of the Americans with Disabilities Act of 1990 ("ADA").[1] Specifically, the complaint alleges that Defendant (1) failed to "provide an unobstructed high forward reach to the towel dispenser no greater than 48 inches (1220 mm) above the ground," (2) failed to "provide a

[1] This is not Plaintiff's only lawsuit pending in this district. From the Court's review, it appears that, from May 26, 2017 to August 28, 2017, Plaintiff brought 111 cases against Utah businesses, most alleging identical or nearly identical violations of the ADA.

parking space identified with a sign that includes the International Symbol of Accessibility", (3) failed to "provide accessible parking space identification signs 60 inches (1525 mm) above the finish floor or ground surface," (4) failed to "provide signs containing the designation 'van accessible' that identify van parking spaces," (5) failed to "provide toilet flush controls on the open side of the water closet," and (6) failed to "insulate or otherwise configure water supply and drain pipes under sinks to protect against contact." ECF No. 2 at 6–7.

Defendant asks the Court to dismiss Plaintiff's complaint in its entirety. Defendant presents three independent arguments favoring dismissal: First, Defendant has allegedly remediated all alleged violations, rendering Plaintiff's claim moot; second, Plaintiff does not satisfy the injury-in-fact requirement for standing; and third, Plaintiff has failed to join an indispensable party.

## II. MOOTNESS

### A. LEGAL STANDARD

Defendant's motion alleges that Defendant has remediated the alleged violations of the ADA, rendering them moot, and therefore the Court lacks subject-matter jurisdiction. Article III limits a federal court's jurisdiction to "cases and controversies." *See* U.S. Const. art. III, § 2, cl. 1. "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal jurisdiction." *Disability Law Ctr. v. Milcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005). "An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Utah Animal Rights Coal. v. Salt Lake City*, 371 F.3d 1248, 1256 (10th Cir. 2004). Consequently, once a controversy ceases to exist, "the action is moot and this court lacks jurisdiction to adjudicate the matter." *Wyoming v. Dept. of Interior*, 674 F.4d 1220, 1228 (10th Cir. 2012) (citing *United States v. Seminole Nation*, 321 F.3d 939, 943 (10th Cir. 2002)). When a party seeks only equitable relief, "[p]ast exposure to

illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Beattie v. United States*, 848 F.2d 1092, 1094 (10th Cir. 1991). "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss under Rule 12(b)(1) take two forms: facial and factual. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Defendant's motion constitutes a factual challenge. In a factual challenge, "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* at 1003. District courts "may not presume the truthfulness of the complaint's factual allegations," and they have "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

Still, district courts are required to convert Rule 12(b)(1) motions into Rule 12(b)(6) motions to dismiss or Rule 56 motions for summary judgment "when resolution of the jurisdictional question is intertwined with the merits of the case." *Id.* "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.*

## B. ANALYSIS

### 1. Defendant's Motion Must be Converted to a Rule 56 Motion for Summary Judgment

The Court must first determine whether to convert Defendant's motion to a Rule 12(b)(6) motion to dismiss or to a Rule 56 motion for summary judgment. That determination hinges upon whether subject-matter jurisdiction depends on the same statute that provides the substantive claim in this case (the ADA).

Defendant argues that it "investigated the allegations and undertook remediation efforts, where such were warranted, and made any and all repairs necessary to ensure its customers with disabilities are afforded full and equal enjoyment of the facilities and services offered at the Taylorsville Seagull Book." ECF No. 14 at viii. Specifically, Defendant avers that it has taken the following remedial actions:

1. It corrected the height of its bathroom towel dispenser.
2. It replaced the flush handle on the toilet with a more accessible one.
3. It insulated the water supply and drain pipes under the bathroom sink.
4. It contacted its landlord regarding parking space and sign compliance with the ADA.

*Id*.

As evidentiary support for these allegations, Defendant filed two declarations from Jeff Wheeler, Managing Director of Retail Operations at Seagull Book. Attached to Mr. Wheeler's declarations are photos of the allegedly now-compliant toilet, towel dispenser, and sink. *See* ECF Nos. 15, 17.

Evaluating whether Defendant's remedial actions have mooted Plaintiff's claims would require this Court to interpret the ADA—the statute on which this Court's jurisdiction is based and which provides for the substantive claim in the case. Consequently, under the rule of *Holt*, the jurisdictional question is intertwined with the merits, and the Court must convert Defendant's motion to a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment.[2]

[2] Defendant argues that the allegations on which Plaintiff relies to claim intertwinement are not intertwined with the jurisdictional issues before the Court. But this is not the standard. The question is whether subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case. *See Holt*, 46 F.3d at 1003. Defendant also cites to *Tandy v. City of Wichita*, 380 F.3d 1277 (10th Cir. 2004), which upheld dismissal on mootness grounds (without an intertwinement analysis) when the defendant had voluntarily complied. However, the *Tandy* court found the plaintiff's prospective claims moot because he died. *Id.* at 1290. Here, Plaintiff likewise brought claims for prospective relief—the same claims that Defendant believes are now mooted by remedial action.

Because evidence beyond that contained in the pleadings will be required to resolve this action, the Court converts Defendant's motion to a Rule 56 motion for summary judgment.

**2. Defendant has Failed to Prove that it has Remedied the Alleged Violations**

Mr. Wheeler's declarations provide some evidence that Defendant has remediated the allegations regarding the toilet, the sink, and the towel dispenser. *See* ECF No. 17. And Mr. Wheeler avers that "there are two handicap accessible parking stalls in the parking area in front of the store" and that Seagull Book "sent request to DDR Family Centers LP, the Taylorsville Seagull Book's landlord, to immediately investigate the claims in the Complaint [related to parking signage] and take any necessary remediation, and they have agreed to address the issues." *Id.* at 3.

However, there are significant shortcomings in Mr. Wheeler's declarations and the attached exhibits. First, Mr. Wheeler's first declaration (ECF No. 15) lacked a signature or date. Second, Mr. Wheeler's second declaration (ECF No. 17) indicates that Mr. Wheeler is a resident of Tooele County, not Utah County as was indicated in his first declaration. Third, the photographs attached to the second declaration seem to depict two separate bathrooms. Fourth, the photographs show a towel dispenser with a tape measure held in front, but it is impossible to see from the picture from whence the tape measure is actually measuring.

Consequently, while it appears that Defendant may have remedied the alleged ADA parking violations with regard to the sink, the toilet, and the towel dispenser, the evidence before the Court is insufficient to support such a conclusion.

Pursuant to Rule 56(e), the Court will give Defendant two weeks to re-file affidavits that comply with 28 U.S.C. § 1746 and attach well-founded, authenticated exhibits that provide

---

But to the Court's knowledge, Plaintiff is not dead. Therefore, mootness depends upon whether Defendant's remedial action made it clear that the alleged wrongful action cannot reasonably be expected to recur. The intertwinement analysis applies, and Defendant's motion must be converted.

evidentiary support for claims made in those affidavits. Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact . . . .").

Plaintiff argues that Defendant's motion should not be granted without sufficient time for Plaintiff to conduct discovery and an evidentiary hearing. Pursuant to Rule 56(d), Plaintiff is given forty-five days from entry of this order in which to oppose the factual underpinnings of Defendant's motion by inspecting the toilet, sink, and/or towel dispenser, or conducting other limited discovery. *See Russell v. United States*, 2009 WL 2929426, at *2–3 (D. Ariz. Sep. 10, 2009) (granting time for additional discovery related to subject-matter jurisdiction); *see also* Fed. R. Civ. P. 56(e). Plaintiff's request for an evidentiary hearing is denied inasmuch as this motion has been converted to one for summary judgment, in which an evidentiary hearing would be inappropriate.

## III. INJURY IN FACT

### A. LEGAL STANDARD

Defendant also argues that Plaintiff lacks standing to maintain his claims because he has not alleged an injury in fact. To establish Article III standing, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is
> (a) concrete and particularized and
> (b) actual or imminent, not conjectural or hypothetical;
> (2) the injury is fairly traceable to the challenged action of the defendant; and
> (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000). Here, Plaintiff seeks prospective relief, so to show injury in fact, he "must be suffering a continuing

injury or be under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004).

Defendant contends that Plaintiff is an ADA "tester" and therefore is not likely to return to Defendant's location. Consequently, he is not under a real and immediate threat of being injured in the future. However, Plaintiff's status as an ADA tester is irrelevant because the Tenth Circuit has held that ADA testers have standing to sue under Title III of the ADA. *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014). Like any plaintiff, testers must demonstrate that they have "indeed suffered a cognizable injury in fact that will be redressed by the relief sought." *Id.*

In *Tandy*, the Tenth Circuit held that several ADA testers had standing to seek injunctive relief against the City of Wichita. 380 F.3d at 1284–89. Those plaintiffs were "under a real and immediate threat of experiencing a lift malfunction" on city buses because they averred in affidavits an intent "to test Wichita Transit's fixed-route services several times per year." *Id.* at 1287. The Tenth Circuit held that their sworn testimony that they intended to use buses several times per year "suggests a concrete, *present* plan to use" the buses. *Id.* at 1284. And in *Abercrombie*, the plaintiff averred in two affidavits that she intended to return to the locations in question "at least six times per year." 765 F.3d at 1211. Again, the Tenth Circuit held that the plaintiff had demonstrated a real and imminent threat of encountering an alleged accessibility barrier and therefore had standing. *Id.* at 1212.

### B. Analysis

In his complaint, Plaintiff twice avers that he intends to visit Defendant's place of public accommodation "several times per year in the near future." ECF No. 2 at ¶¶ 16, 49. Defendant argues that Plaintiff's status as a serial ADA plaintiff makes it unlikely that he would be able to visit Defendant's location several times per year. But the Court is not so persuaded. On the

contrary, Plaintiff's apparent dedication to ADA litigation has led him to file suits against at least 111 separate businesses from May to August of this year. It is not implausible that he could or would continue his frequent visits—particularly if he believes the locations in question are continuing to violate provisions of the ADA. Consequently, Plaintiff has alleged an injury in fact, and he has standing to bring suit.[3]

## IV. FAILURE TO JOIN AN INDISPENSIBLE PARTY

In addition to the bathroom accessibility issues that Defendant claims to have remedied, Plaintiff's complaint asserts several ADA violations in the parking lot adjacent to Seagull Book. The parties disagree regarding whether Defendant may be liable for these alleged violations. Defendant argues that "Seagull Book has absolutely no control or responsibility over the parking area of which Kelley complains" and therefore it "cannot be liable under the ADA for allegations

---

[3] Defendant also complains, at great length, that Litigation Management and Financial Services ("LMFS") is actually the party in interest and "is the one 'party' set to benefit financially from this lawsuit." ECF No. 14 at 17. Defendant relies heavily on the New Mexico chief magistrate's recommendation in *Carton v. Carroll Ventures, Inc.*, 1:17-CV-0037, 2017 U.S. Dist. LEXIS 107135 (D.N.M. 2017), Proposed Findings and Recommended Disposition, Docket No. 39, filed July 10, 2017. Since Defendant's filing, the New Mexico district court adopted the magistrate's recommendations and sustained objections in part. *Carton v. Carroll Ventures, Inc.*, 2017 WL 4857447 (D.N.M. Oct. 26, 2017). In its decision, the New Mexico district court dismissed the ADA claims "pursuant to the statute governing proceedings *in forma pauperis*." *Id.* at *3 (citation omitted). In holding that Ms. Carton's claims were malicious pursuant to the statute governing proceedings *in forma pauperis*, the court noted that

> the Court was misled into believing that Plaintiff Carton lacked the resources to pay the required filing fees, it appears that Attorney Pomeranz made little effort to ensure that the factual contentions in the Complaints had evidentiary support, Attorney Pomeranz also made little effort, if any, to assure that Ms. Carton agreed with the written allegations filed with the Court, and Attorney Pomeranz and LMFS prepared and filed the IFP applications on Ms. Carton's behalf knowing, **<u>but failing to disclose</u>** to the Court, that Ms. Carton indeed had the ability to pay the filing fees through her agreement with LMFS.

*Id.* (internal quotation marks omitted). Here, Defendant alleges that Plaintiff and his attorney are associated with LMFS. But even if that is so (and it very likely is), none of the key facts underlying the New Mexico court's decision are common to the case presently at bar. The Court will not extend in any way the New Mexico court's unrelated analysis to the facts at hand.

As for Defendant's argument that Plaintiff is not the true party in interest: It may be true that "the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals)." *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1375 (M.D. Fla. 2004). Because the only economic incentive for ADA enforcement is attorney's fees, "the existing law encourages massive litigation" rather than "conciliation and voluntary compliance." *Id.* The hundreds of cases before this Court cry out for a solution. But the solution lies with Congress.

stemming from the parking areas." ECF No. 14 at 18. Defendant maintains that it is "only a lessee of the retail space for the Taylorsville Seagull Book, and not of the parking lot" and "has no control over any signage or ADA compliance of the parking lot, which is owned and under control of the lessor." ECF No. 14 at 8. The evidence submitted in support of Defendant's motion confirms that Defendant's lease does not include any right to the parking lot.[4] And even if it did, Defendant's lease prohibits alterations, additions, or improvements to the premises without prior written consent from the landlord. *See* ECF No. 14-13 at 14. Consequently, Defendant posits that the proper party is its landlord—the owner of the parking lot—and that Plaintiff's failure to join that party prevents this Court from according complete relief. *Id.* at 19.

Plaintiff counters that Defendant has control to make modifications to the exterior and that if it wished to remove ADA barriers, it would have at least sought written approval from the landlord to do so.[5] Plaintiff further argues that Defendant cannot delegate its duty to comply with the ADA to the landlord. In support, Plaintiff cites *Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000). That court held that "contractual allocation of responsibility has no effect on the rights of third parties." *Id.*at 833. However, *Botosan* does not stand for the proposition that a lessee cannot delegate its responsibility to comply with the ADA to a landlord. Rather, that case held that a landlord cannot delegate its responsibility to comply with the ADA to a lessee.

In *Kohler v. Bed Bath & Beyond of California, LLC*, 780 F.3d 1260, 1264 (9th Cir. 2015), the Ninth Circuit refused to extend *Botosan* to the inverse situation—the same situation

---

[4] Seagull Book's lease gives Seagull Book and its customers the non-exclusive right to use common areas (including "parking areas, roadways, pedestrian sidewalks, loading docks, delivery areas, exterior surfaces of Shopping Center buildings," etc.). But the lease gives Seagull Book no control over those common areas whatsoever.

[5] The leased premises end at the "exterior face of any exterior walls." And the full lease clause to which Plaintiff refers reads, "Tenant shall not perform any work, which would in any way alter or modify the appearance or structural integrity of the building without prior written approval from the Landlord." This does not grant or imply any right of Defendant to alter the parking lot. Consequently, Plaintiff's argument that Defendant should have sought approval from the landlord to make changes to the parking lot is baseless.

now before this Court. Persuasively, the Ninth Circuit reasoned that Bed, Bath & Beyond's leasing a premises from the landlord imposed ADA compliance obligations "on it for that part of the property it controls" but "the landlord's preexisting obligations to the entire property continue unaffected." *Id.*

Here, Defendant does not lease any part of the parking lot, so the landlord maintains control over the parking lot and its signage. Plaintiff's argument that Defendant should be liable for ADA violations in the parking lot is inconsistent with the terms of Defendant's lease. Because Defendant does not lease a particular section of the parking lot, holding it liable for ADA violations in the parking lot would impose on Defendant liability for violations occurring *anywhere* in the parking lot. As the court noted in *Kohler*, "such an outcome serves no purpose other than to magnify the potential targets for an ADA lawsuit." *Id.* Therefore, the ADA does not impose liability upon Defendant for violations occurring in the parking lot or any other areas under the exclusive control of the landlord.

## V. ORDER

For the reasons above,

1. Defendant's motion to dismiss is **CONVERTED TO A MOTION FOR SUMMARY JUDGMENT UNDER RULE 56**.
2. Plaintiff's request for discovery is **GRANTED**. The parties shall be permitted to engage in limited fact discovery to allow Plaintiff to oppose Defendant's motion. Such discovery shall be completed by Friday, December 15, 2017.
3. Plaintiff's request for an evidentiary hearing is **DENIED**.
4. Plaintiff's ADA claims against Defendant based on parking lot violations are **DISMISSED WITH PREJUDICE**.

5. Defendant shall file a supplemental memorandum with supporting evidence regarding its mootness claim by Tuesday, November 14, 2017. This brief shall not exceed seven pages in length. Plaintiff's response, if any, is due Friday, December 15, 2017, and is subject to the same length requirement. Defendant may file a reply memorandum of no more than five pages by December 22, 2017.

Signed November 1, 2017

BY THE COURT

Jill N. Parrish

______________________________

Jill N. Parrish
United States District Court Judge